UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LANE HATCHER, Individually, in a
Representative Capacity for All Persons Identified
by K.S.A. 60-1902, and as Special Administrator
of the Estate of Amanda A. L'Heureux,

        Case No. 20-2374-SAC-ADM

    Plaintiff,

    v.

HCP PRAIRIE VILLAGE KS OPCO LLC and
SUNRISE SENIOR LIVING MANAGEMENT
INC.,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Lane Hatcher ("Plaintiff") brought this wrongful death action on behalf of the known heirs of her mother, Amanda A. L'Heureux ("L'Heureux"), pursuant to KAN. STAT. ANN. § 60-1901, *et seq.*[1]  On February 18, 2022, Hatcher informed the court that the parties had reached a settlement of all claims.  (ECF 74.)  Now before the court is Plaintiff's Motion for Approval of Wrongful Death Settlement and for Evidentiary Hearing.  (ECF 79.)  By way of this motion, Hatcher asks the court to approve the settlement and to conduct an apportionment hearing, as required by KAN. STAT. ANN. § 60-1905, to award costs and reasonable attorneys' fees, and to apportion the remaining net settlement amount to L'Heureux's known heirs.

As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing on June 27, 2022.  Hatcher appeared through her counsel Jonathan Steele of Steele Chaffee, LLC.

---

[1] Plaintiff Lane Hatcher brings this wrongful death action, individually, in a representative capacity for all persons identified by KAN. STAT. ANN. § 60-1902, and as Special Administrator of the Estate of Amanda Annette L'Heureux.

Defendants HCP Prairie Village KS OPCO LLC and Sunrise Senior Living Management, Inc. (collectively, "Defendants") appeared through counsel Matthew Klose of Horn Aylward & Bandy, LLC.   There were no other appearances.

At the hearing, Plaintiff offered the following exhibits into evidence, which the court received without objection from Defendants:

- Exhibit 1 – Full, Final, and Complete Release, Settlement, Indemnity and Hold Harmless Agreement (submitted in camera)

- Exhibit 2 – a compendium of the sworn declarations of Lane Hatcher, Lori Hatcher, and Brady Hatcher

- Exhibit 3 – the Settlement Statement with the proposed allocation of settlement proceeds (submitted in camera)

- Exhibit 4 – the attorney-client fee agreement between Plaintiff and her attorneys

At the conclusion of the hearing, the court returned these exhibits to the parties.

## I.     FINDINGS OF FACT

The court, after being fully advised and after due consideration, finds as follows:

1. Plaintiff brought this action against Defendants alleging negligence and wrongful death in connection with care and treatment rendered to L'Heureux while she was a resident of HCP Prairie Village KS OPCO LLC d/b/a Brighton Gardens of Prairie Village, from approximately January 2, 2019 through April 24, 2020, resulting in a fracture in L'Heureux's hip that required two surgeries and resulted in an infection, which Plaintiff alleges directly contributed to her contracting Covid-19 and ultimately dying.

2. L'Heureux died on April 26, 2020.   Plaintiff has brought a cause of action for wrongful death pursuant to KAN. STAT. ANN. § 60-1901, *et seq*.

3. Defendants deny liability and deny that they caused or contributed to cause L'Heureux's death.

4. Plaintiff is a surviving daughter of the decedent L'Heureux, and the wrongful death beneficiary who has brought a wrongful death claim under KAN. STAT. ANN. § 60-1901, *et seq.*

5. L'Heureux was not survived by a spouse or parents.

6. L'Heureux had three (3) children, natural or adopted: Lane Hatcher, Lori Hatcher, and Brady Hatcher.

7. Plaintiff and L'Heureux's other children have been given notice of the settlement, of this motion to approve the settlement and the settlement apportionment, and of the hearing on this motion as required under Kansas law.   They all approve of said settlement and distribution.

8. Plaintiff affirms that there are no other heirs at law of L'Heureux to give notice of the settlement, of this motion to approve the settlement and the settlement apportionment, and of the motion hearing pursuant to KAN. STAT. ANN. § 60-1905.

9. Plaintiff represents and warrants that she knows of no other wrongful death beneficiary other than as set forth above, and that there are no other wrongful death beneficiaries as defined under KAN. STAT. ANN. §§ 60-1901, *et seq.*

10. Plaintiff and Defendants reached a settlement and resolution of this matter, as Plaintiff has sworn to in her declaration and as set forth in Exhibit 1, the Full, Final, and Complete Release, Settlement, Indemnity and Hold Harmless Agreement entered into by and between the Estate of Amanda L'Heureux; Lane Hatcher, individually, as co-personal representative of the Estate of Amanda L'Heureux, and in a representative capacity for all persons identified by KAN. STAT. ANN. § 60-1902; Brady Hatcher,

3

individually; and Sunrise Senior Living Management, Inc. and the facility known as Brighton Gardens of Prairie Village.

11. Plaintiff Lane Hatcher and the other two known heirs, Brady Hatcher and Lori Hatcher, now ask the court to approve the apportionment of the wrongful death settlement proceeds.

12. Plaintiff has employed Steele Chaffee, LLC to assist in prosecuting the above cause of action under a contingency fee arrangement.   Her attorneys have informed the court that they fully have investigated the law and the facts pertinent to the above-captioned cause of action and have advised Plaintiff accordingly.   Her attorneys have advised Plaintiff that her cause of action may be compromised and settled with Defendants upon the terms set forth in this Report and Recommendation, to the extent adopted by order of the district court, and in the Full, Final, and Complete Release, Settlement, Indemnity and Hold Harmless Agreement.

13. Plaintiff and her attorneys have had sufficient time to become fully informed about the nature and extent of damages, the legal merit of the claims made against Defendants, and the uncertain outcome of the litigation.

14. Although Defendants deny liability to Plaintiff of any kind or character, the parties have nevertheless been able to negotiate a compromise and settlement. The gross amount is set forth on Exhibit 3 (referenced in Plaintiff's Motion for Approval of Wrongful Death Settlement and for Evidentiary Hearing).

15. Plaintiff and her attorneys believe and have represented to the court that the settlement amount and settlement agreement are fair and reasonable considering all the facts and

circumstances and that their approval by this court would be in the best interests of Plaintiff and wrongful death beneficiaries.

16. Plaintiff waives a trial by jury and the right to appeal.

17. At the June 27 settlement apportionment hearing, the parties asked the court to approve Plaintiff's attorneys' fees and costs and an apportionment of the settlement proceeds to L'Heureux's heirs after deducting for costs, reasonable attorneys' fees, and medical liens.   Specifically, Plaintiff asked the court to apportion the gross settlement amount as follows: (1) approximately 2.27% to Plaintiff's attorneys' fees, (2) approximately 2.67% to costs associated with this action, (3) approximately 35.1% to medical liens, and (4) 60% to L'Heureux's heirs.   And, Plaintiff asked the court to apportion the 60% of the settlement proceeds for the heirs as follows: one third to each of the surviving children, Lane Hatcher, Lori Hatcher and Brady Hatcher (or 20% each of the total settlement).[2]

---

[2] The court has omitted references to the settlement amounts in this Report and Recommendation because the parties' settlement agreement includes a confidentiality clause.   At the June 27 hearing, the court heard counsel's arguments for maintaining the confidentiality of the settlement figures and finds that the interest in preserving the result of confidential settlement negotiations outweighs the public interest in accessing the settlement amounts here. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).   Specifically, the confidentiality clause was essential to the settlement and the agreement would not have been entered into without it, the confidentiality provision was a material part of Defendants' decision to settle this case, and nullifying the provision would subvert the parties' agreement.   The courts long have recognized a public interest in supporting private efforts to resolve litigation.   Also, here, this interest does not conflict with other public interests.   In the Kansas Wrongful Death Act, the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under that Act.   As this Report and Recommendation discusses, the Kansas Wrongful Death Act requires court approval of how a settlement apportions the settlement's proceeds among decedent's heirs.   *See* KAN. STAT. ANN. § 60-1905.   However, the Act does not require court approval of the settlement amount. *Cf. Adams v. Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137-39 (Kan. 2001) (explaining KAN. STAT. ANN. § 60-1903's requirement for a court or jury

After considering the parties' submissions, the evidence presented at the hearing, and counsel's comments, the court is prepared to rule on attorneys' fees and costs and the proper apportionment of the wrongful death settlement proceeds.

## II.   LEGAL STANDARD

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas."   *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011).   As stated above, Plaintiff brings this action under the Kansas Wrongful Death Act, which requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing.   KAN. STAT. ANN. § 60-1905.   The court should first allow costs and reasonable attorneys' fees for Plaintiff's counsel.   *Id.*   Then, the court must apportion the recovery among the heirs in proportion to the loss sustained by each one.   *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each").   Specifically, the applicable statute provides as follows:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys' fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

---

"to award fair and just damages" is "associated with trials and verdicts" but not settlements). Because of this role, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the interest in resolving disputed litigation through a confidential settlement.

KAN. STAT. ANN. § 60-1905.

The Kansas Wrongful Death Act allows for recovering damages including: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. KAN. STAT. ANN. § 60-1904. The statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transport, Inc*., 125 F. Supp. 2d 444, 450-55 (D. Kan. 2000); *see also* KAN. STAT. ANN. § 60-1903 (describing damages the court or jury may award in a wrongful death action). Pecuniary damages are those that "can be estimated in and compensated by money." *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages in a wrongful death action "should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased." *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "mental anguish, bereavement, loss of society, and loss of companionship." *Id*. at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id*. (quoting *Corman v. WEG Dial Tel., Inc*., 402 P.2d 112, 115 (Kan. 1965)).

7

## III.   ANALYSIS

The court addresses the distribution of the settlement proceeds in the order that KAN. STAT. ANN. § 60-1905 presents them.

### A.   Costs

KAN. STAT. ANN. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation.   *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004). Here, Steele Chaffee, LLC represents that it expended costs filing this action, expert review fees, and costs in defending an appeal Defendants initiated in the D.C. Circuit Court of Appeals.   The court has reviewed the costs presented at the hearing on Exhibit 3 and finds they are reasonable. The court thus deducts approximately 2.67% of the wrongful death settlement proceeds to compensate Plaintiff's counsel's reasonable costs.

### B.   Attorneys' Fees

KAN. STAT. ANN. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case."   *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999).   "The general rule is that an attorney is entitled to the reasonable value of services performed for the client."   *Id.*   When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a).   *Id.*   Those factors are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8)

8

whether the fee is fixed or contingent.

Rule 1.5(a).

Plaintiff's counsel seeks an award of attorneys' fees representing approximately 2.27% of the gross recovery, which represents a much smaller fee than the contingency fee agreement counsel reached with Plaintiff.   At the hearing on June 27, Plaintiff's counsel described the work conducted to reach the settlement here, including preparing the initial filings, opposing Defendants' motions to dismiss, work associated with the appeal to the D.C. Circuit Court of Appeals, participating in written discovery and scheduling depositions, and engaging in settlement negotiations.   He also described the contested nature of the case, Defendants' antipathy towards settlement of lawsuits of this kind, and how the parties have been negotiating the claims at issue here for some time.

Plaintiff's attorney-client fee agreement provides for her attorneys to receive up to 40% of the gross recovery.   The above amounts of approximately 2.67% and 2.27% of the gross recovery for Steele Chaffee, LLC's costs and fees (respectively) total only 4.9% of the gross recovery, which falls far short of the 40%.   At the hearing, Plaintiff's counsel explained the interplay between this shortfall and the amounts on the Settlement Statement that allocate approximately 35.1% of the gross recovery to medical liens (Medicare and Medicaid).   He explained that the medical lien amounts listed in the left-hand column represent the maximum amount of those liens based on the final demand letter issued by the Benefits Coordination & Recovery Center ("BCRC") after it received Plaintiff's settlement documentation.   However, Plaintiff's counsel is appealing some of the itemized expense amounts in those "final" lien amounts.   To the extent that Plaintiff's counsel is successful in the appeal and BCRC reimburses any portion of the lien payments, Plaintiff's counsel will keep any recovery of those lien payments up to a total 40% of the gross recovery.   In

other words, the attorneys' fees and costs ultimately awarded to Steele Chaffee, LLC could range anywhere from 4.9% to 40% of the gross recovery, and the law firm bears the risk of what percentage it will recover depending on its success appealing some of the itemized expense amounts in the medical liens.   Either way, a total of 60% will remain for the heirs.

The court finds the Rule 1.5(a) factors support the requested attorneys' fees for this wrongful death case.   *See, e.g., Newton*, 385 F. Supp. 2d at 1108 (finding a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding the attorney's one-third contingency fee with plaintiff was reasonable); *Turman*, 125 F. Supp. 2d at 447-48 ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions.").   The court thus concludes the approximately 2.27% attorney fee award requested by Plaintiff's counsel, with the potential to increase the total amount of costs and attorneys' fees to 40% of the total recovery to the extent that Plaintiff's counsel is successful in appealing the medical liens, is reasonable.   The court therefore awards attorneys' fees accordingly.

### C.  Apportionment of Settlement

Lastly, the court considers how to apportion the remaining wrongful death settlement proceeds.   Plaintiff proposed the following apportionment of the gross settlement amount: approximately 35.1% to medical liens and 60% to L'Heureux's heirs in the amounts and to the parties listed on Exhibit 3 presented at the hearing.   Specifically, Plaintiff asked the court to apportion the 60% gross settlement proceeds one third each (or 20% of the total settlement) to Lane Hatcher, Lori Hatcher, and Brady Hatcher.   At the hearing, the court accepted sworn declarations from each of the heirs in lieu of their attendance and testimony.   The declarations confirmed that they waived their right to appear at the hearing, that they have read the Full, Final,

and Complete Release, Settlement, Indemnity and Hold Harmless Agreement (Exhibit 1), and that they agree to its terms.   The declarations further confirmed that they have read the Settlement Statement (Exhibit 3) and understand its contents.   The heirs confirmed they understand that, after medical liens, attorneys' fees and attorney expenses are paid, they will receive 60% of the settlement.   They confirmed they understand that, of the 60% settlement amount apportioned to the heirs, each will receive one third of that amount (or 20% each of the total settlement).   They each asked the court to allocate the disbursement of net proceeds as set forth in the Settlement Statement.   They further confirmed they understand the risks and benefits of the settlement, including that the court's approval of this settlement "brings this matter to a close forever" and that they knowingly "consent to waive the opportunity to have a trial by jury."

Although none of the heirs testified or attested to the heirs' losses, pecuniary or otherwise, the court understands they are paramount.   After considering the evidence at the hearing, the court concludes the proposed apportionment to L'Heureux's heirs is appropriate.

## IV.    CONCLUSION

The court approves the following apportionment of the settlement proceeds:

| | |
|---|---|
| Gross Settlement Proceeds | 100% |
| | |
| Approved costs | 2.67%* |
| Attorney fee award (as approved in this Order) | 2.27%* |
| Medical Liens | 35.1%* |

* With the potential to increase the attorneys' fee award so that costs and attorneys' fees total up to 40% of the gross recovery to the extent that Plaintiff's counsel is successful in reducing medical liens

| | |
|---|---|
| Lane Hatcher | 20% |
| Lori Hatcher | 20% |
| Brady Hatcher | 20% |

* * * * *

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(a), and D. KAN. RULE 72.1.4(b), the court informs the parties that any party may file specific written objections to this report and recommendation within fourteen days after being served with a copy. If no party files objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this recommendation will be allowed by any court. *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE RECOMMENDED** that the district court grant Hatcher's Motion for Approval of Wrongful Death Settlement and for Evidentiary Hearing (ECF 79) and apportion the wrongful death settlement proceeds according to and consistent with this Report and Recommendation.

**IT IS SO ORDERED.**

Dated June 27, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

12